# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2015AP1016 & 2015AP1119 |
| COMPLETE TITLE: | Margaret Pulera,<br>　　　　　Petitioner-Appellant,<br>　　　v.<br>Town of Richmond and Town of Johnstown,<br>　　　　　Respondents-Respondents. |

ON CERTIFICATION FROM THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | June 20, 2017 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 17, 2017 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Rock and Walworth |
| JUDGE: | Barbara W. McCrory and Phillip A. Koss |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | R.G. BRADLEY, J. concurs. |
| DISSENTED: | A.W. Bradley, J. dissents, joined by ABRAHAMSON, J. |
| NOT PARTICIPATING: | KELLY, J. did not participate. |

ATTORNEYS:

For the petitioner-appellant, there were briefs filed by *Sarah A. Huck*, *Malinda Eskra* and *Reinhart, Boerner, Van Dueren, S.C.,* Milwaukee, and oral argument by *Sarah Huck*.

For the respondents-respondents, there was a brief by *Sara L. Gehrig* and *Nowlan & Mouat LLP*, Janesville, and oral argument by *Sara L. Gehrig.*

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

Nos.   2015AP1016 & 2015AP1119

(L.C. Nos.   2014CV1232 & 2014CV871)

STATE OF WISCONSIN                          :          IN SUPREME COURT

**Margaret Pulera,**

      **Petitioner-Appellant,**

    **v.**

**Town of Richmond and Town of Johnstown,**

      **Respondents-Respondents.**

**FILED**

**JUN 20,2017**

Diane M. Fremgen
Clerk of Supreme Court

Appeal from consolidated orders of the Circuit Courts for Rock and Walworth Counties. *Reversed and cause remanded.*

¶1    PATIENCE DRAKE ROGGENSACK, C.J.    This appeal comes before the court on certification by the court of appeals.[1] Margaret Pulera (Pulera) appeals dismissals of the petitions for certiorari review of highway orders recorded in Rock[2] and

---

[1] Pulera v. Town of Richmond and Town of Johnstown, Nos. 2015AP1016 and 2015AP1119, unpublished certification (Wis. Ct. App. Dec. 23, 2015).

[2] The Honorable Barbara W. McCrory presided.

Walworth[3] Counties. The issue certified is: what event triggers the thirty-day period under Wis. Stat. § 68.13(1)(2013-14)[4] during which certiorari review may be obtained for a town board's highway order. To address this issue, we must interpret the terms of § 68.13(1), the statute affording certiorari review, in accord with Wis. Stat. § 82.15, the statute governing appeals of highway orders.[5]

¶2 We conclude that the thirty-day period during which certiorari review is available for a town board's highway order to lay out, alter or discontinue a highway begins to run on the date that the highway order is recorded by the register of deeds.[6] This interpretation best comports with the language and structure of Wis. Stat. § 68.13 and Wis. Stat. § 82.15. And, in addition, it provides aggrieved persons and parties a date certain for commencement of the thirty-day period during which judicial review of a highway order is available.

---

[3] The Honorable Phillip A. Koss presided.

[4] All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

[5] In Dawson v. Town of Jackson, 2011 WI 77, 336 Wis. 2d 218, 801 N.W.2d 316, we acknowledged the problems caused by the interplay of Wis. Stat. § 68.13 and Wis. Stat. § 82.15. The legislature may wish to consider revisiting these statutory provisions.

[6] Both towns issued highway orders. Accordingly, we need not address when the deadline begins to run when an individual seeks to appeal a town board's refusal to issue a highway order.

¶3 Pulera's petitions were filed within thirty days of the dates on which the highway orders were recorded by the registers of deeds. Accordingly, we reverse the circuit courts' orders granting the town boards' motions to dismiss Pulera's petitions and remand for certiorari review in either Walworth County Circuit Court or Rock County Circuit Court, as the parties may agree.[7]

## I. BACKGROUND

¶4 The relevant facts in the present case are brief and uncontested. The dispute arises from changes to an intersection located at the county line between Rock and Walworth Counties. Specifically, the intersection is located where County Highway M crosses North County Line Road. Without notifying the Town of Richmond, the Rock County Highway Department made changes to this intersection. To facilitate these changes, the Rock County Highway Department had to discontinue two existing roads.

¶5 On September 9, 2014, the Town of Johnstown (Rock County) and the Town of Richmond (Walworth County) held a joint meeting. At the meeting, both town boards retroactively approved changes to the intersection that the Rock County Highway Department had already completed. This required the

---

[7] If the parties do not agree on which circuit court shall conduct the certiorari review, it shall be conducted in Walworth County Circuit Court.

town boards to approve construction of a new intersection as well as discontinuance of portions of former highways.[8]

¶6 On October 3, 2014, the Richmond Town Board recorded its highway order with the Walworth County Register of Deeds. The order memorialized changes approved at the joint meeting of the town boards. The Johnstown Town Board followed a month later by recording its highway order with the Rock County Register of Deeds on November 3, 2014.

¶7 On November 3, 2014, Pulera filed a certiorari petition in Walworth County Circuit Court that sought review of the Town of Richmond's highway order altering the intersection and discontinuing portions of the highway. Similarly, on December 1, 2014, Pulera filed a certiorari petition in Rock County Circuit Court seeking judicial review of the Town of Johnstown's highway order approving alterations to the same highway and intersection.

¶8 On January 23, 2015, each town filed a motion to dismiss Pulera's certiorari action.[9] The towns alleged that

---

[8] The actions of the Rock County Highway Department are not at issue in the present case. They were the subject of Pulera v. Coopman, No. 2013AP322, unpublished slip op. (Wis. Ct. App. Nov. 13, 2013) petition for review denied 2014 WI 50, 354 Wis. 2d 863, 848 N.W.2d 859.

[9] On February 27, 2015, Pulera moved to consolidate the two actions in Walworth County Circuit Court. The Walworth County Circuit Court did not address Pulera's motion. Pulera later filed a motion to consolidate in Rock County Circuit Court; it also did not address the motion. The court of appeals consolidated the cases before certifying Pulera's appeals to us.

Pulera's petitions were untimely because neither petition was filed within thirty days of Pulera's receipt of the towns' decision to alter the highway as they alleged is required by Wis. Stat. § 68.13.[10]

¶9 Rock County Circuit Court dismissed Pulera's action as untimely. The court reasoned that the thirty-day period during which certiorari review may be sought for a highway order commenced when Pulera received actual notice of the vote of the Johnstown Town Board. The circuit court rejected Pulera's argument that the thirty-day period commenced when the register of deeds recorded the town board's highway order.

¶10 The Walworth County Circuit Court also dismissed Pulera's claim as untimely. Unlike the Rock County Circuit Court, the Walworth County Circuit Court concluded that the thirty-day period for seeking certiorari review commenced with the town board's vote. The Walworth County Circuit Court also dismissed the claim for improper venue because a portion of the highway is exclusively in Rock County.[11]

---

[10] The towns argued that the petition filed in Rock County should be dismissed pursuant to Wis. Stat. § 802.06(2)(a)10., another action pending between the same parties for the same cause. The issue was not addressed by the circuit court, and was not properly developed before this court. Accordingly, we do not address it.

[11] We observe that when an intersection is on the county line that separates two counties, venue is proper in either county. See Wis. Stat. § 82.15. Accordingly, venue is proper in Walworth County. And, therefore, the Walworth County Circuit Court incorrectly dismissed Pulera's action for improper venue.

5

¶11 The court of appeals consolidated the cases on appeal and certified them for our review. We now reverse.

## II. DISCUSSION

### A. Standard of Review

¶12 The present case requires us to interpret and apply Wis. Stat. § 68.13 and Wis. Stat. § 82.15. Statutory interpretation and application present questions of law that we review independently, while benefitting from the circuit courts' analyses. Marder v. Bd. of Regents of Univ. of Wis. Sys., 2005 WI 159, ¶19, 286 Wis. 2d 252, 706 N.W.2d 110.

### B. Statutory Construction, General Principles

¶13 "Judicial deference to the policy choices enacted into law by the legislature requires that statutory interpretation focus primarily on the language of the statute." State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. Accordingly, "statutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" Id., ¶45 (quoting Seider v. O'Connell, 2000 WI 76, ¶43, 236 Wis. 2d 211, 612 N.W.2d 659). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id. (citing Bruno v. Milwaukee Cty., 2003 WI 28, ¶¶8, 20, 260 Wis. 2d 633, 660 N.W.2d 656).

¶14 "Context is important to meaning." Id., ¶46. For this reason, "statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id. (citing State v. Delaney, 2003 WI 9, ¶13, 259 Wis. 2d 77, 658 N.W.2d 416). And, we interpret statutes in such a way as to give effect to each word. Id. ("Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." (citing State v. Martin, 162 Wis. 2d 883, 894, 470 N.W.2d 900 (1991)).

¶15 "Where statutory language is unambiguous, there is no need to consult extrinsic sources of interpretation, such as legislative history." Id. (citing Bruno, 260 Wis. 2d 633, ¶20). "The test for ambiguity generally keeps the focus on the statutory language: a statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses." Id., ¶47 (citing Bruno, 260 Wis. 2d 633, ¶19).

¶16 It is within this framework that we interpret and apply the time limits of Wis. Stat. § 68.13(1) as affected by Wis. Stat. § 82.15.

### C. Wisconsin Stat. § 68.13

¶17 Wisconsin Stat. § 68.01 governs appeals from many types of municipal administrative decisions.[12] It provides:

---

[12] A town is defined as a municipality under Wis. Stat. § 68.04.

7

> Any person having a substantial interest which is adversely affected by an administrative determination of a governing body, board, commission, committee, agency, officer or employee of a municipality or agent acting on behalf of a municipality as set forth in s. 68.02, may have such determination reviewed as provided in this chapter.

Wisconsin Stat. § 68.13(1) provides further guidance: "Any party to a proceeding resulting in a final determination may seek review thereof by certiorari within 30 days of receipt of the final determination." A person aggrieved by a highway order has the same right of appeal. Wis. Stat. § 82.15. Accordingly, a person or party who receives a final adverse determination from a municipal administrative body has thirty days from its receipt to appeal. However, when a determination is "final" and when a party is in "receipt" of such a determination are not defined. These words can become particularly opaque in the context of highway orders issued under Wis. Stat. § 82.12.[13]

¶18 Under Wis. Stat. § 82.03(1)(a), a "town board shall have the care and supervision of all highways under the town's jurisdiction." However, a town board that decides to lay out, alter or discontinue a highway must follow the specific statutory requirements detailed in Wis. Stat. ch. 82. Furthermore, there are two ways in which a town board may lay out, alter or discontinue a highway. First, a town board, on its own initiative, can introduce a resolution to lay out, alter

---

[13] The interplay between these two statutes renders each ambiguous. However, nothing in the legislative history provides helpful guidance in ascertaining the meaning of these provisions.

8

or discontinue a highway. Wis. Stat. § 82.10(3). Alternatively, town residents may petition their town board to "lay out, alter, or discontinue any highway." Wis. Stat. § 82.12(10).

¶19 Under either method, a town board is required to provide notice to various landowners and governmental bodies. See Wis. Stat. §§ 82.10(3)[14] & (4).[15] In addition, a town board is required to hold a public hearing to decide whether creating, altering or discontinuing a highway is in the public interest. Wis. Stat. § 82.11(1) ("At the time and place stated in the notice under s. 82.10, the town board shall hold a public hearing to decide, in its discretion, whether granting the application or resolution is in the public interest.").

---

[14] This section provides:

Upon receipt of an application under sub. (1) or the introduction of a resolution under sub. (2), the board shall provide notice of the time and that the place where it will meet to consider the application or resolution. The notice shall contain a legal description of the highway to be discontinued or of the proposed highway to be laid out or altered and a scale map of the land that would be affected by the application or resolution.

Wis. Stat. § 82.10(3).

[15] A town board "shall publish a class 3 notice under ch. 985" and is required to notify "owners of record lands through which the highway may pass," and the "owners of record of all lands abutting the highway" among others, pursuant to Wis. Stat. § 82.10(4).

9

¶20 Pursuant to Wis. Stat. § 82.12(2), a town board must issue a "highway order" if it decides to grant a petition or approve a resolution to lay out, alter or discontinue a highway. The vote of a town board, in and of itself, does not create a highway order; rather, a "highway order" is a document that is statutorily described in regard to the particulars the document must include.[16]  Wis. Stat. § 82.01(3).  In addition, to give effect to a highway order, the town board is required to take several delineated steps.  Wisconsin Stat. § 82.12 provides:

> The highway order shall be recorded with the register of deeds for the county in which the highway is or will be located and shall be filed with the town clerk.  The town clerk shall submit a certified copy of the order to the county highway commissioner.  If the town has an official map, the order shall be incorporated into the official map.

Wis. Stat. § 82.12(2).

¶21 A person aggrieved by a highway order has the right to seek judicial review of a town board's highway order.  Wisconsin Stat. § 82.15 provides:  "Any person aggrieved by a highway order, or a refusal to issue such an order, may seek judicial review under s. 68.13.  If the highway is on the line between 2 counties, the appeal may be in the circuit court of either county."  Wis. Stat. § 82.15.

---

[16] "Highway order" is statutorily described as "an order laying out, altering, or discontinuing a highway or a part of a highway, that contains a legal description of what the order intends to accomplish and a scale map of the land affected by the order."  Wis. Stat. § 82.01(3).

10

¶22 If a person or party is aggrieved by a highway order, they may seek review of the order using the certiorari process outlined in Wis. Stat. § 68.13(1). However, a person or party aggrieved by a highway order is subject to the same thirty-day period during which review may be sought, as are others who seek certiorari review under § 68.13(1).

¶23 A "final determination" by the town is a condition precedent to certiorari review under Wis. Stat. § 68.13.[17] In addition, Wis. Stat. ch. 82 provides that a highway order must be issued when a town decides to lay out, alter or discontinue a highway. Wis. Stat. § 82.12(2). It is the highway order that "contains a legal description of what the order intends to accomplish and a scale map of the land affected by the order." Wis. Stat. § 82.01(3).

¶24 In addition, it is the recording by the register of deeds that gives public notice of the town board's decision. Public notice is important because there may be persons aggrieved by the town board's decision that were not aware of it. And, the legislature has recognized the importance of this function of the register of deeds. For example, Wis. Stat. § 840.11 governs petitions to alter streets, parks, and other public places. It provides no "order, judgment or decree or

---

[17] Wisconsin Stat. § 68.12 explains when a determination is final under municipal administrative proceedings. However, municipal authorities do not have § 68.11 hearings when considering whether to issue highway orders, and therefore this provision is inapplicable here.

11

final resolution or order taking or affecting such land . . . shall be notice to any subsequent purchaser or encumbrancer unless a certified copy thereof, containing a legal description . . . of the land affected thereby, and accompanied with a map showing the location thereof, is recorded in the office of the register of deeds of the county in which the land is situated." § 840.11(2); see also Wis. Stat. § 107.25.

¶25 Moreover, when real estate is bought or sold, it is to the records of the register of deeds that one looks in a title search for restrictions on land. One purpose recording in the register of deeds is to ensure the public has notice of any changes to real property that occur. See generally, Wis. Stat. § 59.43 (2015-16). Therefore, a town's decision in regard to laying out, altering or discontinuing a highway is not final until the register of deeds records the town's highway order.

¶26 Furthermore, the precise geographic location of the highway in its new form is not provided to the public until the register of deeds records the town's highway order. See Wis. Stat. § 82.12(2) ("If the town has an official map, the [highway] order shall be incorporated into the official map."). Persons seeking to appeal a town's decision laying out, altering or discontinuing a highway may not know the metes and bounds description of the new form of the highway before it is recorded

12

by the register of deeds.[18] Therefore, the triggering event for judicial review of a highway order cannot commence prior to the public being notified of the precise characteristics of the order, i.e. until the register of deeds records it. It would be imprudent to expect persons or parties to make a reasoned decision about whether to seek certiorari review without a precise, recorded highway order. And, for this reason, we generally require a written order from which to appeal. See generally, Ramsthal Advertising Agency v. Energy Miser, Inc., 90 Wis. 2d 74, 75, 279 N.W.2d 491 (Ct. App. 1979) ("An order, to be appealable, must be in writing and filed." (citation omitted)); Helmrick v. Helmrick, 95 Wis. 2d 554, 556, 291 N.W.2d 582 (Ct. App. 1980).

¶27 Beginning the thirty-day period on the date on which the register of deeds records the order also gives effect to the word "receipt" in the phrase "receipt of the final determination" in Wis. Stat. § 68.13(1). The register of deeds recording a highway order gives the public receipt of the proposed highway alteration.

¶28 The practical benefits of concluding that recording the highway order starts the thirty-day period for judicial

---

[18] Of course, notice pursuant to Wis. Stat. § 82.10 provides similar information prior to the hearing. However, the information provided is subject to change at the hearing or at any time prior to the recordation of the highway order by the register of deeds. For this reason, notice given antecedent to the hearing may not provide individuals with this information.

13

review are significant. Specifically, it provides a clear and definite triggering event for commencement of the thirty-day period.[19] And, persons and parties seeking certiorari review of a highway order easily can ascertain the start of that thirty-day period. The deadline for filing a certiorari petition will be the same for all, and factual disputes as to the date by which a certiorari action should have been filed will be less frequent.

¶29 Accordingly, a person or party seeking certiorari review of a town board's decision to lay out, alter or discontinue a highway must file the petition for certiorari review within thirty days of the register of deeds recording the highway order. This triggering event for finality and receipt

---

[19] As the court of appeals explained:

> There are several positive aspects to this interpretation. First, it creates a certiorari filing date that is the same for all potential petitioners. Second, the date of recording will normally be easy to establish from the record. Third, the recording of the highway order creates a wide potential for notice to potential petitioners, because this is a place that attorneys and others will know to check for land records. Fourth, at the time it is recorded, the highway order will be in its final legal form, thus allowing potential petitioners to fully evaluate its effects and decide whether to seek judicial review.

Pulera v. Town of Richmond and Town of Johnstown, Nos. 2015AP1016 and 2015AP1119, unpublished certification (Wis. Ct. App. Dec. 23, 2015).

of the highway order is consistent with the language and context of the relevant statutes.[20]

D. Circuit Court Interpretations of Wis. Stat. § 68.13

¶30 The Walworth County Circuit Court and Rock County Circuit Court each reached a different conclusion when interpreting Wis. Stat. § 68.13 in the context of this highway order. Each court's interpretation, while understandable, is ultimately, unpersuasive.

¶31 The Walworth County Circuit Court concluded that the appeal period during which a certiorari action may be filed starts when a town board votes to lay out, alter or discontinue a highway. The court concluded that "receipt of a final determination" under Wis. Stat. § 68.13(1) occurs when the town board votes. Accordingly, persons and parties would have thirty days from the board's vote laying out, altering or discontinuing a highway during which to commence a certiorari review of the town board's decision.

¶32 However, this interpretation is inconsistent with the plain language of Wis. Stat. § 68.13 and Wis. Stat. § 82.12.

---

[20] A different triggering event must apply when a town board votes not to lay out, alter or discontinue a highway. In such a case, the town will not issue a highway order, so there will be nothing to record. Also, different provisions govern finality of such a decision. See Wis. Stat. § 82.12(3) ("The determination not to issue a highway order shall be final for one year. No application to lay out, alter, or discontinue a highway shall be filed within one year from the date of a determination not to issue a highway order covering the highway or portion of the highway covered in the refused application.").

15

The vote of a town board is not what is appealable under Wis. Stat. § 82.15. It is a highway order that is appealable. Every town board vote will not result in a highway order, e.g., when a town board votes against laying out, altering or discontinuing a highway. Wis. Stat. § 82.12(3). In addition, the circuit court's interpretation reads the word "receipt" out of § 68.13 because persons and parties are not in "receipt" of the highway order when the board votes.

¶33 Moreover, there would be significant practical difficulties with beginning the period for judicial review with a town board vote. Notably, Wis. Stat. § 82.12 does not contain a requirement that an aggrieved person or party be present at the vote. And, even though a party may be present at the board meeting where a vote is taken, there is nothing to suggest that a person who is aggrieved, but not present at the town board meeting, would have any way of receiving notice of a town board's vote. However, as discussed above, the register of deeds' recording of the highway order does provide receipt by public notice of laying out, altering or discontinuing a highway.

¶34 The Rock County Circuit Court concluded that the thirty-day period for an appeal was triggered by actual notice of the board's decision. However, this interpretation does not give effect to each word in the relevant statutes insofar as it reads the word "receipt" and "final determination" out of Wis. Stat. § 68.13(1). See Kalal, 271 Wis. 2d 633, ¶46 ("Statutory

16

language is read where possible to give reasonable effect to every word, in order to avoid surplusage." (citing Martin, 162 Wis. 2d at 894)).

¶35 A town board issues a highway order which the register of deeds records. Wis. Stat. § 82.12(2). But nothing in the statutes requires a town board to provide interested persons with a copy of the highway order. Therefore, no person or party is statutorily required to be in "receipt" of a town board's final determination other than the town clerk, the county highway commissioner and the register of deeds. Wis. Stat. § 82.12(2).

¶36 Moreover, a person or party may receive actual notice that there will be changes to the highway before the highway order is filed with the register of deeds or incorporated into the official map of the town due to filing with the town clerk. Wis. Stat. § 82.12(2) ("The highway order shall be recorded with the register of deeds for the county in which the highway is or will be located and shall be filed with the town clerk. The town clerk shall submit a certified copy of the order to the county highway commissioner. If the town has an official map, the order shall be incorporated into the official map."). Choosing alternate places in which a highway order is filed could result in inconsistent dates as triggering events for the thirty-day period during which certiorari review under Wis. Stat. § 68.13 is available.

17

¶37 Neither the Walworth County Circuit Court's nor the Rock County Circuit Court's interpretation fully comports with the language of Wis. Stat. § 68.13 in the context of Wis. Stat. § 82.15. Therefore, as explained above, we reject those interpretations and conclude that the thirty-day period during which judicial review of a highway order may be commenced starts on the date that the register of deeds records the highway order.

E. Timeliness of Pulera's Petitions

¶38 In the present case, both of Pulera's petitions were timely filed.[21] Each petition was filed in circuit court within thirty days of the dates on which registers of deeds recorded each highway order. The Richmond Town Board's order was recorded by the Walworth County Register of Deeds on October 3, 2014. And, within the thirty-day period for filing a certiorari action, on November 3, 2014, Pulera filed a petition for certiorari review of the highway order in Walworth County Circuit Court.[22]

---

[21] We assume without deciding that Pulera was aggrieved by the highway orders.

[22] Although the action was filed 31 days after October 3, 2014, it falls within the thirty-day filing deadline because the thirtieth day, November 2, 2014, was a Sunday. See Wis. Stat. § 801.15(1)(b) ("Notwithstanding ss. 985.09 and 990.001(4), in computing any period of time prescribed or allowed by chs. 801 to 847, by any other statute governing actions and special proceedings, or by order of court, the day of the act, event or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a day the clerk of courts office

(continued)

18

¶39 Likewise, Pulera's petition for certiorari review in Rock County Circuit Court was timely filed. The register of deeds recorded the Town of Johnstown's highway order on November 3, 2014, and Pulera timely filed a petition for certiorari review in Rock County Circuit Court on December 1, 2014.

III.  CONCLUSION

¶40 Accordingly, we conclude that the thirty-day period during which certiorari review is available for a town board's highway order to lay out, alter or discontinue a highway begins to run on the date that the highway order is recorded by the register of deeds. This interpretation best comports with the language and structure of Wis. Stat. § 68.13 and Wis. Stat. § 82.15. And, in addition, it provides aggrieved persons and parties a date certain for commencement of the thirty-day period during which judicial review of a highway order is available.

¶41 Pulera's petitions were filed within thirty days of the dates on which the highway orders were recorded by the registers of deeds. Accordingly, we reverse the circuit courts' orders granting the town boards' motion to dismiss Pulera's petitions and remand for certiorari review in either Walworth County Circuit Court and Rock County Circuit Court, as the parties may agree.

---

is closed.").

19

*By the Court.*—The orders of the circuit courts are reversed and the cause is remanded.[23]

¶42  DANIEL KELLY, J., did not participate.

---

[23] Justice Annette Kingsland Ziegler and Justice Michael J. Gableman join this opinion. Justice Rebecca Grassl Bradley joins only the mandate of reversal.

¶43 REBECCA GRASSL BRADLEY, J. *(concurring).* I join the mandate of the lead opinion reversing the circuit courts' orders and remanding for certiorari review, but I cannot join its reasoning. The legislature imposes upon this court the hopeless task of reconciling Wis. Stat. § 82.15——which permits a person aggrieved by a highway order or a refusal to issue one to seek judicial review under Wis. Stat. § 68.13(1)——with the language of § 68.13, which allows "[a]ny party to a proceeding resulting in a final determination," to seek certiorari review "within 30 days of receipt of the final determination." Here, Pulera was not a "party to a proceeding," there was no set process for sending her (or anyone else) a "final determination," and no procedure assured any person's "receipt" of the final determination. Faced with this conundrum, the lead opinion creates its own procedure governing the deadline for filing a petition for certiorari following the issuance of a highway order. Although the lead opinion attempts to make the language of the statute fit these circumstances, I cannot join its statutory analysis. As the court of appeals explained in its certification to this court, the statutory language enacted by the legislature has "little connection to the highway order process" and lacks any "useful guidance." It is not this court's job to make up the law, but the lead opinion does so because the legislature unmindfully incorporated the statutory language governing municipal administrative appeals (§ 68.13) into the statute governing appeals over highway orders (§ 82.15) where it simply does not fit.

1

¶44 Nonetheless, I join the lead opinion in reversing and remanding because I conclude Pulera's petition is not untimely. None of the three proposed trigger dates work, and Pulera did not receive a "final determination" because the notice she received did not include the map the statute dictates must be included in order to be a "highway order."[1] The time period for certiorari review would not expire until 30 days after Pulera received the "final determination"——that is, a highway order containing the requisite scale map. I would not create the bright-line rule set forth in the lead opinion, but I agree with the mandate. Accordingly, I respectfully concur.

¶45 I write separately for three reasons: (1) to urge the legislature to enact a statute specifically governing appeals challenging the issuance of and refusal to issue highway orders; (2) to question whether Pulera was "aggrieved" by the Towns' highway orders or whether Pulera was instead aggrieved by Rock County's alteration of the intersection before the highway orders were issued and recorded with the register of deeds; and (3) to highlight Rock County's apparent disregard for Chapter 82 by reconstructing the roads before obtaining the statutorily-required highway orders.

---

[1] A "highway order" must include "a legal description of what the order intends to accomplish and a scale map of the land affected by the order." Wis. Stat. § 82.01(3). Requiring the inclusion of a scale map necessitates a written and not an oral order.

I

¶46 In 2011, this court decided <u>Dawson v. Town of Jackson</u>, 2011 WI 77, 336 Wis. 2d 318, 801 N.W.2d 316, which described the lack of clarity in Wis. Stat. § 68.13(1) regarding highway orders: "The phrase 'receipt of a final determination' is not clear in the context of a highway order." <u>See</u> <u>Dawson</u>, 336 Wis. 2d 318, ¶66 n.5. In <u>Dawson</u>, which involved a town's decision to deny a request for a highway order, this court surmised that the 30-day time limit might be triggered by either the date the town votes to "grant or deny" a request involving a highway order <u>or</u> "the date that a notice of that determination is received by an applicant, if a notice is sent." <u>Id.</u> (emphasis added). This court resolved <u>Dawson</u> without deciding the trigger date for the 30-day time limit because, no matter what trigger date applied, Dawson did not meet the 30-day deadline. <u>Id.</u>

¶47 Six years later, this court is called upon again to apply the incongruous words the statutes say control an appeal of a highway order. Read together, the statutes are so unclear that the two circuit courts deciding Pulera's petitions applied different trigger dates. The Walworth County Circuit Court dismissed Pulera's petition as untimely by using the date the Town voted to issue the highway order because Pulera attended the meeting. In contrast, the Rock County Circuit Court dismissed Pulera's petition as untimely because she did not file it within 30 days of receiving "actual" notice of the not-yet-recorded highway order.

3

¶48 As the court of appeals explained, both interpretations are problematic. Using the town vote as the trigger date ignores the "receipt" language of the statute, disregards the statutory definition of "highway order," and would give notice only to persons in attendance. Using receipt of the unrecorded highway order is problematic because the statutes do not contemplate sending an aggrieved person a copy of the highway order. A receipt-based trigger date could also vary from person to person, depending on when each aggrieved person requested and received the highway order. In the present case, Pulera received the highway orders only because she asked each Town to send them, and what she received did not constitute statutorily-compliant highway orders because they did not include maps.

¶49 Pulera suggests a third possible trigger date: the date the highway orders are recorded with the register of deeds. She argues that recording signifies a final determination and provides a date certain that will be the same for any person aggrieved. The lead opinion adopts Pulera's approach and decides the trigger date is the date the highway order is filed with the register of deeds. Although this resolution may sound reasonable, it does not come from the language of the statute the legislature tells us to apply.

¶50 My analysis focuses on the text of the statute: "Any party to a proceeding resulting in a final determination may seek review thereof by certiorari within 30 days of receipt of the final determination." Wis. Stat. § 68.13(1). "Receipt" is

4

not defined in the statute, but according to Black's Law Dictionary it means "[t]he act of receiving something" or "[a] written acknowledgement that something has been received." Receipt, Black's Law Dictionary (10th ed. 2014). A non-legal dictionary similarly defines "receipt" as "[t]he act of receiving" or "[a] written acknowledgment that a specified article . . . has been received." Receipt, American Heritage Dictionary (5th ed. 2011). The statutory language says the 30 days begin to run on the date the person is in "receipt of the final determination." How can a person be deemed in receipt of the final determination at the time the highway order is recorded at the register of deeds? The register of deeds is certainly in "receipt" when the document is recorded, but under the plain meaning of "receipt" no aggrieved person could be in "receipt" by virtue of such recording. How could an aggrieved person know the highway order has been recorded? Would this require an aggrieved person to check the register of deeds daily after the town vote? Here, Rock and Walworth Counties each recorded the highway order at the respective register of deeds on different dates: Rock recorded its highway order 55 days after the joint town meeting, and Walworth recorded its highway order 24 days after the joint town meeting. So, should the lead opinion's bright-line rule run 30 days from the first recording or 30 days from the last recording? Would this interpretation be subject to a discovery rule, making "receipt" the date the aggrieved person discovers or should have discovered the highway order has been recorded? Whatever "receipt" means in the

5

statute, the general recording of a document at the register of deeds cannot possibly constitute receipt by any person aggrieved by a highway order. If this is what the legislature had in mind it could have plainly said so.

¶51 The legislature has been on notice for at least six years (since this court decided Dawson) that the statutory language it tells us to apply in highway order cases does not work, and I write to urge the legislature to enact a statute outlining timeframes for appealing the issuance of a highway order as well as the denial of a highway order. Perhaps the legislature will adopt the trigger date the lead opinion suggests, but the legislature rather than this court should choose. If the legislature selects the date of recording at the register of deeds for issued orders, it must enact a separate trigger date for cases where the town board refuses to issue a highway order, because refusals do not require a recording at the register of deeds. Clarity in this area of the law is needed, and I respectfully urge the legislature to promptly address it.

II

¶52 As a foundational matter, I question whether Pulera was aggrieved by the Towns' retroactive highway orders or whether Pulera was instead aggrieved by Rock County's act of altering the intersection before the Towns issued highway orders and recorded them with the register of deeds. Wisconsin Stat. § 68.06 defines a "person aggrieved" as "any individual . . . whose rights, duties or privileges are

6

adversely affected by a determination of a municipal authority."[2] By the time the Towns voted to issue the highway orders, the construction project altering the intersection was done. How can these hollow highway orders have aggrieved anyone? The orders were an after-the-fact formality to dot the i's and cross the t's. The highway orders were not the official approval permitting the project to begin; they were ostensibly a way to legitimize what had already been finished a year earlier.

¶53 Pulera complains that she was adversely affected by the alteration of the intersection. It appears to me her grievance lies with Rock County, which altered an intersection and discontinued two existing roads without the requisite highway orders.[3] She was not aggrieved by the issuance of

---

[2] Note that Wis. Stat. § 68.01 provides:

> Any person having a substantial interest which is adversely affected by an administrative determination of a governing body, board, commission, committee, agency, officer or employee of a municipality or agent acting on behalf of a municipality as set forth in 68.02, may have such determination reviewed as provided in this chapter.

[3] I acknowledge that Pulera attempted to challenge the Rock County Board of Supervisors' reversal of its decision precluding the proposed redesign of the intersection, and that her petition seeking judicial review was dismissed on the ground that the County's action was not reviewable because it was a "legislative enactment," see Wis. Stat. § 68.03(1), and because Wis. Stat. § 82.01(6) applies only to cities, villages, and towns. See Pulera v. Coopman, No. 2013AP322, unpublished slip op. (Wis. Ct. App. Nov. 13, 2013). In that case it appears, however, that Pulera only sought review of the Rock County Board of Supervisor's reversal of its initial decision to leave the intersection as it was. That suit did not challenge Rock County's or the Rock County Highway Department's physical alteration of the intersection without any apparent fulfillment
(continued)

7

paperwork that obviously had no effect on a completed construction project.

III

¶54 A related issue lurks beneath the surface of this case but neither party raised it: did the Rock County Highway Department violate the law by altering an intersection and discontinuing town roads without first obtaining the statutorily-required highway order? The record is limited as to why the Rock County Highway Department ignored the statutorily-required procedures set forth in Wis. Stat. ch. 82, "Town Highways."

¶55 Some facts are not in dispute. The intersection at County Highway M and North County Line Road was changed. Town roads were eliminated. North County Line Road runs along the border with Rock County on one side and Walworth County on the other. Construction began in June 2012 and was completed by August 2013.

¶56 Wisconsin Stat. §§ 82.10-.12 set forth the procedures controlling such construction. Sections 82.10(1) and (2)

---

of the procedural requirements of Wis. Stat. § 82.21(1)(b), which provides that "[t]he procedure to lay out, alter, or discontinue a highway on the line between a town and another town . . . shall begin only when . . . in each affected municipality . . . [t]he town board, city council, or village board introduces a resolution to lay out, alter, or discontinue a town line highway." (Emphasis added.) Although a county board has broad discretion in addressing highway construction projects under Wis. Stat. § 83.03(1), this intersection involved town roads. When town roads are involved, the county must comply with the law set forth in Wis. Stat. ch. 82.

identify who can initiate the process and the documents required to do so. Sections 82.10(3) and (4) provide notice requirements and specify who must receive notice. Section 82.11 requires the town board to "personally examine the highway or proposed highway" and "hold a public hearing to decide, in its discretion, whether granting the application or resolution is in the public interest." Section 82.12 describes the time the town board has to decide whether to issue or not issue the highway order, as well as the recording requirements if a highway order is issued.

¶57 Rock County did not follow the statutory process before beginning or completing construction. The County began construction before getting highway orders from either Town. When the Town Board of Richmond sent a letter to the Rock County Highway Department explaining it unanimously voted to leave the intersection as is, it was ignored. The position of the Town Board of Johnstown is not as apparent. What is clear is that neither Town issued highway orders until after construction was completed in August 2013. The statutorily-required highway orders were issued only after the Richmond Town Board and the Johnstown Town Board held a joint meeting on September 9, 2014. The Richmond Town Board recorded its highway order approving the new intersection on October 3, 2014. The Johnstown Town Board recorded its highway order approving the new intersection on November 3, 2014. From this record, it appears that the Rock County Highway Department did not follow the statutory procedures in Wis. Stat. ch. 82, performed the construction in

9

violation of the law, and thereby forced the Towns' issuance of highway orders.

¶58 Laws are not written to be ignored. People who live and work in these towns travel these roads and are affected by the layout of town highways. The legislature has determined that when town highways are "laid out, altered, or discontinued" certain procedures affording notice and due process to those most affected must be followed. The Rock County Highway Department apparently decided these laws did not apply. Regardless of whether there are facts not in this record to explain Rock County's actions, all county highway departments changing a town's highways should take care to follow the basic procedures and law set forth in Wis. Stat. ch. 82. Failure to follow these procedures deprives people who are adversely affected by the decisions of their governing bodies of any meaningful recourse.

¶59 For these reasons, I respectfully concur.

10

¶60 ANN WALSH BRADLEY, J. *(dissenting).* We are asked to determine what event triggers the thirty-day deadline for filing a certiorari petition for judicial review of a town highway order. Specifically, we are tasked with interpreting the terms of Wis. Stat. § 68.13(1) (providing for certiorari review) in conjunction with the terms of Wis. Stat. § 82.15 (governing appeals of highway orders).

¶61 There are several areas of intrinsic disconnect between these statutory provisions that cannot be easily and forthrightly reconciled. We have previously brought our concerns about these statutes to the attention of the legislature and do so again here.[1] Accordingly, there is no clear answer as to when the certiorari filing deadline for judicial review of a town highway order begins to run.

¶62 Given this conundrum, we are asked to discern whether either of the interpretations advanced by the parties provide a workable solution under the statutes as they are currently written. The petitioner, Margaret Pulera, argues that the triggering event is the recording with the register of deeds of a highway order adopting a proposed change. The respondents, Towns of Richmond and Johnstown, counter that the triggering event is the date of a publicly noticed hearing at which the town board votes to grant or deny a highway order.

---

[1] See Dawson v. Town of Jackson, 2011 WI 77, 336 Wis. 2d 318, 801 N.W.2d 316.

¶63 The lead opinion adopts the petitioner's interpretation.[2] Lead op., ¶2. According to the lead opinion, it is the recording of the highway order with the register of deeds that "best comports with the language and structure of Wis. Stat. § 68.13 and Wis. Stat. § 82.15." Id.

¶64 As the court of appeals certification acknowledged, there are strengths and flaws to each interpretation.[3] The lead

---

[2] I use the term "lead" opinion for two reasons. First, I am concerned that without this cue, the reader may mistakenly believe that the first opinion has precedential value. Although four justices join in the mandate of the opinion to reverse the circuit courts' orders and remand for certiorari review (Roggensack, C.J., joined by Ziegler, J., Gableman J., and Rebecca Grassl Bradley, J.), it represents the reasoning of only three justices (Roggensack, C.J., joined by Ziegler, J., and Gableman, J.). Kelly, J., did not participate. Accordingly, there is no opinion that represents the reasoning of the majority of the court.

Second, I use the term "lead" opinion because although it is undefined in our Internal Operating Procedures, its use here is consistent with past description. I have said "that a lead opinion is one that states (and agrees with) the mandate of a majority of the justices, but represents the reasoning of less than a majority of the participating justices." State v. Lynch, 2016 WI 66, ¶ 143, 371 Wis.2d 1, 885 N.W.2d 89 (Abrahamson & Ann Walsh Bradley, J.J., concurring in part, dissenting in part) (citing Hoffer Props., LLC v. State, Dep't of Transp., 2016 WI 5, 366 Wis.2d 372, 874 N.W.2d 533); see also State v. Weber, 2016 WI 96, ¶83 n. 1, 372 Wis. 2d 202, 887 N.W.2d 554 (Ann Walsh Bradley, J., dissenting).

[3] In Pulera v. Town of Richmond and Town of Johnston, Nos. 2015AP1016 and 2015AP1119, unpublished certification (Wis. Ct. App. Dec. 23, 2015), the court of appeals discussed three possible triggering events: (1) the town board vote on a proposed highway change; (2) the recording of a highway order adopting a proposed change; or (3) actual notice of the town board's determination.

(continued)

2

opinion errs in failing to acknowledge the flaws of the interpretation it adopts. In particular, adopting the date of the recording of the highway order addresses only half of the problem. It provides no triggering event for certiorari review when a town board issues no highway order because it votes against a proposed change. Additionally, the necessary notice that will be provided by the lead opinion's procedure is unpredictable at best and illusory at worst.

¶65 Contrary to the lead opinion, I determine that the date of the town vote is the event triggering the deadline for certiorari review. Admittedly, the date of the town vote does not fit perfectly with the statutory language. However, this

---

The strengths and flaws of the first two approaches advanced by the parties are set forth in the analysis section below. Because neither party asks this court to adopt the date of actual notice as the triggering event, I do not analyze it.

Nevertheless, I set forth the advantages and disadvantages of that interpretation as proffered in the certification of the court of appeals. It explained that one positive aspect of this interpretation was that it closely tracked the statutory language requiring "receipt of a final determination." Wis. Stat. § 68.13(1). However, it acknowledged that a significant flaw in this interpretation is that there is no requirement in the town highway chapter that highway orders be sent to anyone other than the register of deeds, the town clerk, and the county highway commissioner. Wis. Stat. § 82.12(2).

Additionally, the court of appeals determined that if the thirty-day deadline for each petitioner starts to run from only the petitioner's receipt of the highway order, this could lead to a continuing series of certiorari filing dates that are individual to each potential petitioner. This would result in problems due to lack of finality and leave the town uncertain as to when it could begin the actual road work without the possibility of judicial review.

3

interpretation has the advantage of providing notice and a review procedure to the largest number of interested parties on a date certain.

¶66 Accordingly, I respectfully dissent.

I

¶67 Before discussing the advantages and disadvantages of each interpretation, I provide a brief analysis of the statutory provisions at issue. Pursuant to Wis. Stat. § 82.15, which provides for judicial review of highway orders, "[a]ny person aggrieved by a highway order, or a refusal to issue such an order, may seek judicial review under s. 68.13." The cross-referenced judicial review statute provides in relevant part that "[a]ny party to a proceeding resulting in a final determination may seek review thereof by certiorari within 30 days of receipt of the final determination." Wis. Stat. § 68.13(1).

¶68 There are several areas of disconnect between these statutory provisions. The highway order process does not use the term "final determination" or any similar term. Nor does it have a "party to a proceeding" in the same manner as does a municipal administrative proceeding under Wis. Stat. ch. 68. Additionally, because there is no requirement that a highway order be sent to all interested parties, it is not clear how to apply the requirement that a certiorari petition be filed within thirty days of "receipt" of the "final determination." Wis. Stat. § 68.12(1).

¶69 The lead opinion resolves the issue presented by concluding that "the thirty-day period during which certiorari review is available for a town board's highway order to lay out, alter or discontinue a highway begins to run on the date that the highway order is recorded by the register of deeds." Lead op., ¶2. Admittedly, this interpretation has some advantages. At the time it is recorded, the highway order will be in its final legal form. As the lead opinion explains, this comports with the statutory language allowing review of a "final determination." Wis. Stat. § 68.13(1).

¶70 However, there are several significant flaws associated with determining that the recording of the highway order with the register of deeds triggers the certiorari filing deadline. First, as the lead opinion acknowledges in a footnote, its new rule applies only to petitioners seeking certiorari review of a town board vote to issue a highway order, adopting a proposed change. Lead op., ¶30 n.20. Accordingly, the lead opinion provides no solution for petitioners seeking certiorari review of a decision to deny a proposed change. As it explains, "[i]n such a case, the town will not issue a highway order, so there will be nothing to record." Id.

¶71 This is problematic because a whole category of people are left without a procedure for review. Under Wis. Stat. § 82.15, the thirty-day deadline for filing a petition for certiorari review is the same regardless of whether a town board votes for or against a proposed highway change. Yet, when a town board votes against a highway change, the lead opinion

5

leaves those potential petitioners clueless and void of any direction or avenue for review. See Lead op., ¶30 n.20.

¶72 Second, the lead opinion further errs in contending that "persons and parties seeking certiorari review of a highway order easily can ascertain the start of that thirty-day period." Lead op., ¶28. It should acknowledge, as the court of appeals indicated in its certification, that the only way for potential petitioners to know when the highway order is recorded is to repeatedly check the land records. See Pulera v. Town of Richmond and Town of Johnston, Nos. 2015AP1016 and 2015AP1119, unpublished certification (Wis. Ct. App. Dec. 23, 2015). In reality, the lead opinion's interpretation does not mandate notice to anyone other than the register of deeds, the town clerk, or the county highway commissioner. See Wis. Stat. § 82.12(2). For all others it is a "constantly seek and you may find" notice procedure.

¶73 Third, because there is no time limit for the recording of the highway order with the register of deeds, this interpretation has the potential to indefinitely delay the review process. This constant seeking could last for an indeterminate and unpredictable length of time. If the highway order is never filed, then any review is illusory.

¶74 Finally, the lead opinion's analogy to Wis. Stat. § 840.11, which governs petitions to alter streets, parks, and other public places, is misplaced. See lead op., ¶24. The notice provided here is distinguishable because of the differences between the interested parties requiring notice.

¶75 Wisconsin Stat. § 840.11(2) provides that no final order shall be notice to any subsequent purchaser or encumbrancer unless recorded in the office of the register of deeds. It is reasonable to put the onus on a potential purchaser to check with the register of deeds before purchasing property. It is less reasonable to require an unknown number of potential petitioners to continually check with the register of deeds to determine if a highway order has been recorded.

II

¶76 Contrary to the lead opinion, I interpret the date of the public town vote as the event triggering the deadline for certiorari review. There are several advantages to this interpretation.

¶77 First, and most significant, it would provide all petitioners with the same filing deadline regardless of whether the town board voted to adopt or deny the proposed change. Second, factual disputes about the date of the vote are unlikely and thus the date is a date certain. Third, this is the earliest event from which the certiorari filing date could begin to run, meaning that the town board decision would become final at the earliest possible date.

¶78 Finally, before a vote can be taken, notice requirements must be met. Wisconsin Stat. § 82.10(3) requires public notice of any meeting where the town intends to vote on a resolution to reconfigure a road. "The notice shall contain a legal description of the highway to be discontinued or of the

7

proposed highway to be laid out or altered and a scale map of the land that would be affected . . . ."  Id.

¶79  Like all of the possible interpretations, the date of the town vote also has disadvantages.  The lead opinion is correct that the vote of a town board does not create a written "highway order."  Lead op., ¶20.  A "highway order" is defined as a written document that contains a legal description and a scale map.  Wis. Stat. § 82.01(3).  Yet, as noted above, through the mandated public notice, potential petitioners have the required information.

¶80  Admittedly, not all potential petitioners may attend the town board meeting or receive notice of the vote after it occurs.  Although this solution is not a perfect fit with the statutory language, the issue of notice is lessened here because a town vote on a proposed highway change takes place at a publicly noticed meeting.  As the Walworth County circuit court explained in ruling that the triggering event was the date of the town board vote, "[a]nybody that is interested in what is going to happen at that intersection attends those meetings and finds out what happens."  Br. of Pet., app. at 69. The circuit court further reasoned that unlike the recording of the highway order, the date of the vote would provide a specific date on which all interested parties would receive notice.

¶81 Although none of the possible interpretations is a perfect fit, the advantages of using this event as the triggering event outweigh the disadvantages.  Additionally, in Dawson v. Town of Jackson, 2011 WI 77, ¶66 n.5, 336 Wis. 2d 318,

8

801 N.W.2d 316, this court highlighted the statutory imperfections at issue in this case and advanced a solution consistent with this interpretation.

¶82 In sum, I interpret the date of the town vote as the event triggering the deadline for certiorari review of a highway order. The date of the town vote does not fit perfectly with the statutory language. However, this interpretation has the advantage of providing notice and a review procedure to the largest number of interested parties on a date certain.

¶83 I commend the petitioner in this case for advancing her cause in the interest of ensuring safe roadways in her community. However, because she sought certiorari review more than thirty days after the town vote, I conclude that her petitions were untimely.

¶84 Accordingly, I respectfully dissent.

¶85 I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.